UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**HSN CAPITAL LLC (USA), et al.,**

    Petitioners,

v.                                                      Case No.  8:05-cv-1769-T-30TBM

**PRODUCTORA Y COMERCIALIZADOR
DE TELEVISION, S.A. DE C.V. (Mexico),**

    Respondent.
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Petitioners HSN Capital LLC (USA) and Home Shopping Espanol S. de R.L. de C.V.'s (hereinafter collectively "HSN") Petition to Vacate Arbitration Award and Supporting Memorandum (Dkt. 10), Respondent Productora Y Comercializador de Television, S.A. de C.V.'s (hereinafter "PCTV") Memorandum in Opposition to Petitioner's Motion to Vacate Arbitration Award and Cross-Motion for Confirmation of Arbitration Award (Dkt. 18), HSN's Opposition to said Cross-Motion (Dkt. 25) and hearing on the same.

## **BACKGROUND**

On January 10, 2001, HSN and PCTV entered into an Affiliation Agreement (hereinafter "Agreement") wherein PCTV agreed to provide HSN commercial cable television carriage services, and HSN agreed to provide commercial cable television

programming to Mexico via satellite. Under the terms of the agreement, PCTV was to ensure that certain Mexican cable systems broadcast HSN's retail sales programs 24 hours a day. In exchange, HSN paid PCTV an initial launch fee and further agreed to pay PCTV for each additional subscriber who received HSNs programming, as well as a sales commission. Pursuant to the terms of the Agreement, the first five (5) years were mandatory for both parties.

On or around May 17, 2002, HSN decided it would no longer provide commercial television programming in Mexico and advised PCTV of the same. When PCTV declined to return to HSN a portion of the initial launch fee previously paid to PCTV, a contractual dispute between the two parties arose. The parties were unable to settle their dispute. Consequently, HSN, pursuant to the terms of the affiliation agreement, initiated an international arbitration against PCTV with the International Chamber of Commerce (hereinafter "ICC") seeking a partial refund of its initial launch fee. In response, PCTV filed a Counterclaim for future and incurred losses of new subscriber fees and sales commissions.

Under the ICC rules, each party nominated one member of the arbitration panel; HSN nominated Raymond T. Elligett, Jr. while PCTV nominated Manuel Garcia Barragan Martinez.[1] After Messers Elligett and Martinez were confirmed by the Secretary General of the ICC, the parties agreed to nominate David Griffiths as the third arbitrator and chair of the panel. Subsequent to the ICC's appointment, Mr. Griffiths withdrew from the panel due to

---

[1] Originally, PCTV nominated Alejandro Ogarrio as an arbitrator. However, HSN challenged his appointment due to a former professional relationship he had with PCTV's counsel. As a result, the ICC did not permit Mr. Ogarrio to join the panel.

medical reasons. The ICC then appointed David R. Haigh as chair of the panel.

Pursuant to the ICC rules, each nominated arbitrator was to complete an Arbitrator's Declaration of Acceptance and Statement of Independence. This form was to be completed by the arbitrator so that any potential conflicts of interest the arbitrator felt existed would be disclosed. The form states in part:

> (*If you accept to serve as arbitrator, please also check one of the following boxes. The choice of which box to check will be determined after you have taken into account, inter alia, whether there exists any past or present relationship, direct or indirect, with any of the parties or their counsel, whether financial, professional, or of another kind and whether the nature of any such relationship is such that disclosure is called for pursuant to the criteria set out below. Any doubt should be resolved in favor of disclosure.*)

(Dkt. 1, Ex. D)(emphasis in original). Haigh completed this form and attached a letter in which he disclosed a professional relationship with PCTV's counsel, Jose Abascal and Luis Enrique Graham Tapia (Haigh, Tapia and Abascal served on the NAFTA 2022 Committee together). In the letter, Haigh stated that he did not believe the contacts with Messres Abascal or Tapia interfered with his impartiality. HSN alleges that, while it received the disclosure form, it did not receive Haigh's letter.

On December 6, 2004, Attorney Jose Astigarraga made his initial appearance on behalf of PCTV and conducted most of the arbitration. Upon Astigarraga's appearance, counsel for HSN inquired of Haigh whether any potential conflict arose with Astigarraga's

appearance.[2]  Haigh advised counsel for HSN of his and Astigarraga's service on a committee several years prior to the arbitration.  HSN made no objections at that time to Haigh's continued service as Chair of the arbitration panel.

The Arbitration Panel entered its award on June 3, 2005, finding HSN in breach of the Agreement for unilaterally terminating the Agreement within the first five years.  The Panel unanimously awarded PCTV monetary damages, attorneys' fees and costs.

On September 14, 2005, HSN wrote a letter to the ICC seeking the disqualification of Haigh, due to his undisclosed conflicts of interest, and the other members of the panel who, according to HSN, were tainted by Haigh's conflicted influence (Dkt. 1, S-Ex. H).  HSN also sought to set aside the final award.  These undisclosed conflicts stemmed from relationships Haigh had with Abascal and Astigarrage through service on various committees. Specifically, Haigh's service with Abascal as members of the NAFTA Advisory Committee on Private Commercial Disputes wherein, according to HSN, Haigh and Abascal "deliberated together on international arbitration issues on behalf of their two nations, Mexico and Canada," (Dkt. 1, S-Ex. H); as well as Haigh's service with Astigarraga on the NAFTA 2022 committee.[3]  According to HSN, Haigh's relationship with Astigarraga and Abascal deprived it of a fair and impartial arbitration proceeding.

---

[2] HSN's counsel indicated during the hearing in this matter that it appeared to him that Astigarraga and Haigh were familiar with one another, thus prompting HSN's counsel to inquire as to the nature of their relationship.

[3] According to HSN, the NAFTA 2022 committee, comprised of 22 private sector members, met numerous times over many years in different cities in North America. The NAFTA 2022 Committee "afforded its members the opportunity to develop close professional and social relationships through committee work, lavish dinners and other social events, and extensive contracts over a course of years." Id.

On September 20, 2005, HSN filed the instant petition before this Court seeking to vacate the arbitration award.

Haigh responded to HSN's letter on October 20, 2005, stating that while he did serve on the NAFTA 2022 committee with Abascal and Astigarraga, his service had no bearing on his impartiality (Dkt. 1, S-Ex. K). Additionally, Panel member Garcia Barragan Martinez wrote a letter to the ICC confirming the impartiality and fairness of the arbitration proceeding as well as the impartiality of Haigh (Dkt. 1, S-Ex. I).

On October 24, 2005, the ICC issued a ruling rejecting HSN's challenge and request to disqualify Haigh and the co-arbitrators and to set aside the final award.

## **DISCUSSION**

Pursuant to 9 U.S.C. Section 207, a court "shall confirm the [arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C.§ 207 (2006). Article V of the Convention[4] provides those situations when the recognition and enforcement of an arbitration award can be refused. According to Article V, recognition and enforcement of an award may be refused if the party seeking refusal furnishes proof that:

1.
    . . .

   (b) The party against whom the award it invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceeding or was otherwise unable to present his case; or

---

[4] The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.

>. . .
>
>   (d) The composition of the arbitral authority or the arbitral procedure
>   was not in accordance with the agreement of the parties, or failing such
>   agreement, was not in accordance with the law of the country where the
>   arbitration took place.
>
>. . .
>
>2. Recognition and enforcement of an arbitral award may also be refused
>   if the competent authority in the country where recognition and
>   enforcement is sought finds that:
>
>. . .
>
>   (b) The recognition or enforcement of the award would be contrary
>   to the public policy of that country.

9 U.S.C. § 201 (2006).

In its Petition, HSN seeks to have this Court vacate the final arbitration award due to (1) the constitution of the arbitral tribunal and the arbitration procedure not being carried out in accordance with the agreement signed by HSN and PCTV; (2) HSN not being duly notified of Haigh's appointment; and (3) the award being against public policy as it gives PCTV a double recovery.

### A. <u>Failure to carry out the constitution of the arbitration proceedings</u>

According to HSN, the Agreement with PCTV required all disputes arising under the Agreement be resolved in arbitration before a panel of three arbitrators. Additionally, the arbitration was to be conducted in accordance with the Commercial Arbitration Rules of the ICC. HSN argues in its Petition that due to Haigh's failure to fully disclose his "substantial friendship" with Abascal and his relationship with Astigarraga, the ICC mandatory rules and

procedures were not followed and thus the award should be set aside.

### 1. *The Haigh and Abascal relationship.*

To support its contention that Haigh was not an impartial arbitrator, HSN goes into great detail in the Petition about the "substantial friendship" shared between Haigh and Abascal, namely, their service on various arbitration committees. Specifically, HSN lists Haigh and Abascal's service as members of the Board of Directors for the American Arbitration Association (hereinafter "AAA") and the Advisory Board of the Institute of Transnational Arbitration. In addition, HSN presents evidence that during the period in which HSN and PCTV were engaged in arbitration, and while Haigh was deliberating the outcome of the case, Haigh and Abascal both attended an AAA meeting in Dublin, Ireland.[5] Further, according to HSN, during their time in Ireland, Haigh and Abascal had, what HSN describe as, *ex parte* communications.[6] In HSN's view, these memberships and the professional relationship between Haigh and Abascal should have been disclosed. Moreover, the nondisclosure constituted a breach of the ICC rules and supports the setting aside of the arbitration award. This Court disagrees.

In order for the arbitration award to be set aside, HSN had the burden of showing that one of the grounds for refusal or deferral of recognition or enforcement of the award was present. See Imperial Ethiopian Government v. Baruch-Foster Corp., 535 F.2d. 334, 335-36 (5th Cir. 1976). While HSN has gone to considerable lengths to describe what it terms as the

---

[5] During the Dublin meeting, Haigh and Abascal were reappointed to the AAA Board of Directors.

[6] HSN admits that it does not know the nature of the conversations.

"substantial friendship" between Haigh and Abascal, based on the evidence in the record and the argument of the parties at the hearing, it is this Court's opinion the relationship between Haigh and Abascal was anything but substantial. The "relationship" described by HSN appears to this Court to be casual at best and stems solely from Haigh and Abascal's membership and positions in the same organizations. HSN has provided no evidence that Haigh and Abascal communicated or interacted at any time other than a few AAA meetings and during their service on the NAFTA 2022 committee. Unlike the cases cited by HSN, there is no evidence Haigh ever defended or participated in a litigation matter against Abascal, see Middlesex Mutual Ins. Co. v. Levine, 675 F.2d 1197, 1200 (11th Cir. 1982); nor that Haigh and Abascal had any financial or business relationship prior to the arbitration proceedings. See Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145 (1969). In fact, the "relationship" between Haigh and Abascal is similar to the relationship described in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, another case cited by HSN. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, 1 F.Supp.2d 1337, 1342 (M.D. Fla. 1998).

In Merrill Lynch, the defendant attempted to have an arbitration award vacated based on the fact that one of the arbitrators was a fraternity brother of one of Merrill Lynch's attorneys. See id. The court found that the relationship between counsel and the arbitrator was too remote and speculative to constitute a conflict of interest and create the appearance

of partiality. See id.[7]  Similarly, the mere fact Haigh and Abascal serve on the same board of directors and are members of the same organization is insufficient to support vacatur of the award, particularly in light of the fact that the AAA board of directors in 2005 consisted of ninety four people, (Dkt. 18, Ex. D); and the NAFTA 2022 committee is made up of approximately thirty eight people from three different countries.[8] See NAFTA Advisory Committee on Private Commercial Disputes, http://www.mac.doc.gov/nafta/adr_main.htm.  Accordingly, HSN's motion on this ground is denied.

### 2. *The Haigh and Astigarraga relationship.*

In addition to Haigh's relationship with Abascal, HSN, as support for the vacatur of the arbitration award,  also focuses on the relationship between Haigh and Astigarraga, specifically Haigh and Astigarraga's service on the NAFTA 2022 committee.  For the reasons stated above, this court finds that HSN's motion on this ground is also denied.

### B. Failure to duly notify HSN regarding Haigh's appointment.

HSN argues the arbitration award should be vacated because HSN was not duly notified of Haigh's appointment to the panel.  However, in reviewing the record in this matter, this Court finds HSN's argument as to this issue has no merit.  Both HSN and PCTV

---

[7] While the cases cited by HSN are not binding on this Court as they deal with domestic arbitrations, this Court agrees with HSN that the cases are persuasive in demonstrating those activities which do create an appearance of impropriety and those that in this Court's view do not.

[8] It is worth noting that the arbitrator selected for the panel by PCTV, Manuel Garcia Barragan Martinez, disclosed on his Declaration of Independence he knew Abascal for many years having attended the same law school.  While Garcia Barragan Martinez stated that he and Abascal rarely got together socially, he did admit that he and Abascal were and have been friends since law school (Dkt. 1, Ex. D).  This Court finds it interesting that HSN made no objection to Garcia Barragan Martinez's participation on the panel, but now, post award, challenges Haigh's and the entire panel's impartiality.

were given notice of Haigh's appointment on or about November 18, 2004 (Dkt. 1, Ex. D), a fact HSN admits in its amended petition (Dkt. 10 at 3). Accordingly, this Court finds that HSN's petition as to this issue is denied.

### C.  Arbitration Award is against public policy.

HSN also argues that the award should be vacated because the award manifestly disregards the law and violates public policy by giving PCTV a double recovery. This double recovery, according to HSN, occurred when the panel, while recognizing PCTV's failure to mitigate its damages, awarded damages to PCTV. In support of its position, HSN cites Rosati v. Bekhor, a Middle District of Florida case dealing with a domestic arbitration award. See Rosati v. Bekhor, 167 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001). While this case is not binding on this court, it is, like many of the cases cited by HSN, persuasive. In Rosati, Judge Kovachevich found that in determining whether an arbitration decision is in manifest disregard of the law, "[i]t is not necessary for an arbitration panel to invoke any statute by name; it is also not necessary to give complete reasoning for an arbitration panel's decision." Id. In the instant case, the panel, while acknowledging PCTV's failure to mitigate, opined that it was "wrong to consider that PCTV's breach of its duty to mitigate could in some fashion be transformed from a shield into a sword in the circumstances of this case. *There is no proper legal basis,* in our view, for presuming as a starting point that the entire initial launch fee would be reimbursed [as HSN felt it should be]" (Dkt. 1, Ex. F) (emphasis added). In this Court's view, the panel adequately explained its reasoning for the award, notwithstanding its acknowledgment of PCTV's failure to mitigate damages. The fact the

panel did not provide more detail as to the legal basis on which the award was based, does not alone mean the award was in manifest disregard of the law or in violation of public policy. Rosati, 167 F. Supp. 2d. at 1346. HSN's Petition as to this issue, is therefore denied.

## CONCLUSION

HSN has failed to demonstrate or provide any evidence of any of the grounds for refusal or deferral of recognition or enforcement of the arbitration award as specified in the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. As such, it is hereby ORDERED AND ADJUDGED that:

1. HSN Capital LLC (USA) and Home Shopping Espanol S. de R.L. de C.V.'s Amended Petition to Vacate Arbitration Award and Supporting Memorandum (Dkt. 10) is **DENIED**.

2. PCTV's Cross-Motion for Confirmation of Arbitration Award (Dkt. 18) is **GRANTED**. The Arbitration Award is confirmed and Judgment is entered for Productora Y Comercializador de Television, S.A. de C.V. against HSN Capital LLC (USA) and Home Shopping Espanol S. de R.L. de C.V. in the amounts set forth in the Final Arbitration decision. This Court, however, reserves jurisdiction as to the amount of costs, if any, which should be awarded in this case.

3. All other pending motions are **DENIED AS MOOT**.

**DONE** and **ORDERED** in Tampa, Florida on July 5, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-1769 - Motion Vacate Arbitration Award.frm